WENDY J. OLSON, IDAHO BAR No. 7634
UNITED STATES ATTORNEY
GEORGE W. BREITSAMETER, IDAHO BAR No. 2871
ASSISTANT UNITED STATES ATTORNEY
KENNETH M. ROBINS
SPECIAL ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV, SUITE 600
800 EAST PARK BOULEVARD
BOISE, IDAHO  83712
TELEPHONE:  (208) 334-1211
FACSIMILE:  (208) 334-1038

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR No. 10-022-S-EJL |
| Plaintiff, ) | |
| ) | GOVERNMENT'S SENTENCING |
| vs. ) | MEMORANDUM AND SECTION |
| ) | 5K1.1 MOTION FOR |
| STANLEY J. FERGUSON, ) | SUBSTANTIAL ASSISTANCE |
| Defendant. ) | |

The United States of America and Wendy J. Olson, United States Attorney for the District of Idaho, George W. Breitsameter, Assistant United States Attorney, and Kenneth M. Robins, Special Assistant United States Attorney for said District, file this sentencing memorandum and makes its section 5K1.1 motion for substantial assistance. Sentencing is scheduled for Monday, November 29, 2010, at 3:00 p.m.

Pursuant to the terms of the plea agreement, the Government recommends the Court impose sentence on Stanley J. Ferguson at an offense level fourteen (14) and a criminal history category of I, yielding a sentencing guidelines range of 15-21 months.

As provided in the plea agreement, the Government further requests the Court impose a sentence at the low end of the sentencing guidelines range of 15 months, followed by three years of supervised release with the conditions recommended by U. S. Probation.

The presentence investigation report, hereinafter referred to as the "PIR," calculated the total amount of restitution of $1,105,651.09.

**I.      STATEMENT OF FACTS**

On December 9, 2009, defendant Stanley J. Ferguson entered into a plea agreement with the Government. The plea agreement was executed before Ferguson appeared and testified before the Federal Grand Jury. This testimony was critical to the Indictment that was returned shortly thereafter against Michael Hymas: Case No. 09-286-S-EJL.

As the Court is aware from the guilty plea and sentencing hearings in *United States v. Michael Hymas and Shauntee Ferguson*, the investigation and prosecution arises from a residential loan fraud scheme.

Between 2004 and 2006, Stanley J. and Shauntee Ferguson obtained twenty-one loans under fraudulent circumstances in relation to various residential properties in Idaho and Utah. The total value of the fraudulent loans was in excess of $7.5 million dollars.

Their primary intent was to acquire residential property and "flip it," or sell it, so they could realize a profit on the sale. The scheme was particularly attractive given the appreciation occurring in the real estate market. Furthermore, the scheme was executed with little or no

financial risk to them, since it was entirely financed with proceeds from fraudulent residential loans.

Although initially successful in realizing profits on a couple properties, the scheme collapsed when they were unable to maintain their monthly loan obligations. In May 2008, Stanley and Shauntee Ferguson filed a petition in bankruptcy in United States Bankruptcy Court for the District of Idaho attempting to discharge over $8 million in secured debt that was owed to various residential lenders. (See Case Number 08-6085-TLM.)

They appeared for an initial meeting of creditors on June 27, 2008, and July 11, 2008, and later for a 2004 examination on August 14, 2008.

During these examinations in the bankruptcy proceeding, Stanley Ferguson admitted to purchasing residential properties for investment purposes so he could "flip" the real estate and realize a profit. He admitted to purchasing over thirteen (13) residential properties – some valued in excess of $1 million. He also admitted to submitting false information in order to obtain financing to purchase the property.

During the 2004 exam Stanley Ferguson admitted to other false representations on the loan applications, including the value of their interest in real estate, the receipt of rental income, interest in a bank account, and the value of various personal property. Of note, during the lengthy 2004 examination in the bankruptcy proceeding, Michael Hymas was never referenced by Stanley Ferguson. It was not until an investigation by the Federal Bureau of Investigation, hereinafter referred to as the "FBI," that Michael Hymas' role as a silent partner in the loan fraud scheme was established.

As a result of the testimony during these proceedings, the matter was referred by the United States Trustee's Office to the FBI. An investigation had previously been initiated based upon criminal referrals from mortgage lenders and financial institutions.

Loan documentation substantiated that Stanley J. Ferguson and Shauntee K. Ferguson obtained approximately twenty-two (22) false and fraudulent residential loans with an approximate value of $8 million dollars.

On August 13, 2009, Stanley J. Ferguson was interviewed by the FBI. He was represented by legal counsel. During the interview he again admitted that he had falsified residential loan applications. He also explained that his father-in-law, the defendant, Michael Hymas, was a partner in the loan fraud scheme. Since Michael Hymas had filed bankruptcy in 2004, he claimed that he was unable to obtain financing. Therefore, financing could only be obtained, individually or jointly, by Stanley J. Ferguson and Shauntee K. Ferguson.

In December 2009, Stanley J. Ferguson executed a plea agreement and agreed to plead guilty and cooperate in the investigation. On December 8, 2009, he testified before the Grand Jury. He testified as to the events that led to the loan fraud scheme and ultimately to the May 2008 bankruptcy proceeding.

In November 2004, Michael Hymas and Stanley and Shauntee Ferguson started to purchase properties for investment purposes. The first two properties were located in a subdivision in Boise. One of the loans was put in the name of Shauntee Ferguson, while the other loan was put in Stan Ferguson's name.

The loan applications consistently misrepresented the monthly income of Stanley and Shauntee Ferguson. In some instances, rental income was misrepresented and fraudulent rental agreements were submitted to support the misrepresentation.

Another falsity attested to by Stanley and Shauntee Ferguson was their intent to occupy the property. As they admitted during the 2004 exam, with the exception of two properties -- 1915 West Sugar Crest Drive and 2881 West Sugar Crest Drive – it was their intent to "flip," or sell, the properties. Despite what was represented on some of the loan applications, they did not intend to reside in the property. Instead, they purchased the property solely for "investment purposes."

The representation that the borrower intends to occupy the residence as their personal residence is material to the lender because the default rate on personal residential loans is lower than loans issued for investment properties. Borrowers are less likely to go into foreclosure on their personal residence. Accordingly, underwriting guidelines for such loans are different and the interest rate charged for investment loans is generally greater due to the higher risk.

In order to ensure borrowers are truthful when they represent on the loan application their intent to reside in the property, the borrower is required to execute a separate Affidavit of Occupancy. In this document, the borrower attests as to their intent to occupy the property. At the loan closing, agents review the affidavits with borrowers to ensure they understand the significance of signing the affidavit and the consequences when lying about it. In some instances, above the signature line the borrower is warned "it is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statement concerning the loan application."

Stanley Ferguson falsely represented on a number of the loans in question his intent to occupy the residential property.

One of the residential properties obtained through fraudulent loan proceeds was used as their personal residence. This was a $1.5 million home located at 1915 Sugar Crest in Eagle, Idaho. It was described by one witness as the "house with a slide" because of the built-in slide that allowed one to get to lower floors in the residence by a slide rather than by taking the stairs.

Stanley and Shauntee Ferguson resided in the house until they relocated because they were unable to make the mortgage payments. The loan went into default and they later attempted to have the debt for the fraudulent loan discharged in their personal bankruptcy proceeding.

In July 2005, Stanley Ferguson obtained a loan for $1,045,450 to purchase a $1.5 million home in Eagle, Idaho, for Michael Hymas. (The loan was not the subject of any criminal charges because of lack of sufficient documentation when the Indictment was returned.) The loan application was false in various ways, including a misrepresentation that Stanley Ferguson earned $16,245 per month.

Michael Hymas and Stan Ferguson used this same residence to obtain a home equity line of credit ("HELOC"). Although a HELOC was initially denied by a lender, they then applied through a different loan broker for a HELOC with a different lender. In November, 2005, based upon fraudulent representations, Countrywide (now Bank of America) funded a $200,000 second mortgage on the residence.

Stanley Ferguson falsely represented on the $200,000 HELOC loan application that he was earning approximately $18,000 per month. Proceeds from the HELOC were used to do landscaping work on the property, pay off debts, and to fund investment properties. In May

2008, Stanley Ferguson listed the debts on his bankruptcy schedule seeking discharge of the obligation.

In summary, Stan Ferguson and the other defendants defrauded multiple lenders on approximately $8 million in loans.  It was their intent to realize a profit from an escalating residential real estate market.  Instead, they resided in million dollar homes for a period of time.  They committed the scheme without risking any of their personal assets but, instead, it was funded with proceeds from the fraudulent loan scheme.  These financial institutions and lenders were defrauded in various ways by the defendant and have incurred substantial losses as a result of the fraud.

## MOTION PURSUANT TO SECTION 5K1.1

Pursuant to the terms of the plea agreement, the Government makes its motion for a downward departure under Section 5K1.1.  Each of the enumerated factors under this section is addressed:

1.)     The significance and usefulness of the defendant's assistance – As previously discussed, Stan Ferguson testified before the federal Grand Jury in December 2009.  His testimony was critical to establishing the role of Michael Hymas in the fraudulent loan activity.  In summary, he has provided significant and useful assistance.

2.)     The truthfulness, completeness and reliability of the testimony – The testimony of Stan Ferguson has generally been truthful, complete and reliable.  Not unlike many white collar criminals, he has attempted to shift responsibility to others, but overall his testimony -- particularly as to role of Michael Hymas -- was reliable and truthful.

3.)     The nature and extent of the defendant's assistance – It would have been difficult to establish the role of Michael Hymas without the cooperation of Stan Ferguson.

    4.)    Danger or risk of injury – not applicable.

    5.)    Timeliness of defendant's assistance – Within a few months of his initial contact by the FBI in August 2009, legal counsel was appointed for Stan Ferguson and he executed the plea agreement that is before the Court.  His cooperation was timely.

## II.    GUIDELINES RANGE AND SENTENCING RECOMMENDATIONS

### A.    Recommendation

Pursuant to the terms of the plea agreement, the Government recommends the Court impose sentence on Stanley Ferguson at an offense level of fourteen (14) and a criminal history category of I, which yields a sentencing guidelines range of 15-21 months.

The Government further recommends a sentence at the low end of the sentencing guidelines, followed by three years of supervised release with all the conditions recommended by U. S. Probation.  This is a sentence that reflects not only the seriousness of the offense described in the Indictment and the Plea Agreement, but also the Defendant's overall conduct as set forth in the PIR.

Following the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), the Court is required to consider the sentencing range calculated under the United States Sentencing Guidelines, together with the other factors set forth in Title 18, United States Code, Section 3553(a), including:  (1) the nature and circumstances of the offenses; (2) the history and characteristics of the Defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the Defendant; (6) the need to provide the Defendant with educational and vocational training, medical care, or other

correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among Defendants involved in similar conduct who have similar records.

> **1.     The Nature and Circumstances of the Offense**

The nature and circumstances of the offense indicate a concerted effort to skillfully cheat lenders on residential loans for personal gain.

> **2.     Defendant's History and Characteristics**

The history of the defendant has been fully discussed in the PIR.

> **3.     The Need For the Sentence To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment.**

The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense will be best served by the government's recommended sentence.

> **4.     The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and Protect the Public From Further Crimes of the Defendant.**

The sentence in this case must be severe enough to deter the Defendant and others from weighing the costs of a lenient sentence versus the benefits of defrauding lenders. The government's recommended sentence will serve that goal and deter others from following their example.

> **5.     The Need To Provide Defendant With Educational and Vocational Training, Medical Care or Other Correctional Treatment**

Another factor that the Court is to consider is the need to provide the Defendant with educational and vocational training, medical care, or other correctional treatment

in the most effective manner and the kinds of sentences available. The Defendant does not have any known medical problems nor a demonstrated need for educational or vocational training.

### 6. The Need to Provide Restitution to Victims

The PIR calculated the total amount of restitution on the counts related to Stanley Ferguson as $1,105,651.09. Accordingly, the Government seeks a restitution order in the amount of $1,105,651.09.

### 7. The Need to Avoid Unwarranted Sentence Disparity Among Defendants Involved in Similar Conduct Who Have Similar Records

The final factor for the Court to consider is the need to avoid unwarranted sentence disparity among Defendants involved in similar conduct who have similar records. In this case, the Sentencing Guidelines calculation includes specific offense level adjustments for virtually all of the aspects of Defendant's conduct, and none of the factors in Section 3553(a) suggest that a sentence outside that range would be appropriate.

## III. CONCLUSION

For the foregoing reasons, the Government respectfully requests that this Honorable Court impose a sentence with the sentencing guidelines, as set forth above.

Respectfully submitted this 22nd day of November, 2010.

> WENDY J. OLSON
> United States Attorney
> By:
>
> _____
> /s/ George W. Breitsameter
> Assistant United States Attorney
>
> _____
> /s/ Kenneth M. Robins
> Special Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of the United States Attorney's Office for the District of Idaho, and that a copy of the foregoing Government's Sentencing Memorandum was served on all parties named below this 22nd day of November, 2010.

    ___ United States Mail, postage prepaid

    ___ Hand delivery

    ___ Facsimile Transmission (fax)

    ___ Federal Express

    _x_ ECF Filing

Elisa G. Massoth  
Elisa G. Massoth, PLLC  
Attorneys at Law  
Post Office Box 1003  
Payette, Idaho 83661

                                                  _____  
                                                  /s/ George W. Breitsameter